320

GREAT AMERICAN STORES CO., PETITIONER, *v.* COMMISSONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 14494.   Promulgated November 16, 1928.

*J. C. Halls*, *Esq.*, for the petitioner.
*Harry Leroy Jones*, *Esq.*, for the respondent.

OPINION.

Siefkin: It is not contended that the stock of the Sterling Baking Co. held by or on behalf of petitioner constituted the two corporations affiliated during the year in question. It, therefore, becomes necessary to examine the additional facts urged by petitioner in support of its contention.

We have repeatedly held the existence of an option to purchase stock held by others does not give to the holder of the option such control of the stock involved as is contemplated by the statute;

*Madera Yosemite Big Tree Auto Co.*, 2 B. T. A. 346; *Bay State Securities Co.*, 3 B. T. A. 43. *Acme Box & Lumber Co.*, 3 B. T. A. 718. In *Canyon Lumber Co.*, 4 B. T. A. 940, which is cited by petitioner, there was not only an option to purchase but a deposit of stock in escrow and an agreement not to vote such stock.

Another fact relied upon in part by the petitioner is the fact of economic dependency of the one corporation on the other. This, of course, is but another way of saying the two corporations were an economic unit. Economic unity has been urged, and, standing alone, denied by this Board as a ground for affiliation. *Rishell Phonograph Co.*, 2 B. T. A. 229; *Adaskin-Tilley Furniture Co.*, 6 B. T. A. 316.

It is stipulated that by agreement between Wolfersberger and Cowin petitioner was entrusted with full authority for managing the affairs of the bakery company. The nature of this agreement is not shown and we can not assume that it was such as to prevent Wolfersberger from interfering with petitioner's policies if he saw fit by exercising his presumptive right to vote the stock held by him. While it may be inferred from the prevailing harmony that Wolfersberger did not exercise his right to vote for a different policy, we have no evidence that he did not in fact vote his stock. The agreement in *Fred Fear & Co.*, 9 B. T. A. 34, does not present a parallel case, as it provided the minority stockholders were not to vote their stock. In the instant case, so far as we are informed, the control of management agreement did not exceed the scope of the understanding in *Adaskin-Tilley Furniture Co.*, *supra*, concerning which we said:

> There is no doubt but that Adaskin had absolute control of the business methods, policies and relations of the two corporations. He dominated and managed the business of each. He settled questions of policy, expediency and methods of operation. He organized both corporations with the understanding that he should have control of the business. We have heretofore held, however, in the *Appeal of Canyon Lumber Co.*, 1 B. T. A. 473, that the control " referred to in the statute, whether it be legal or otherwise, means control of the voting rights of stock." We further held in the *Appeal of Watsontown Brick Co.*, 3 B. T. A. 85, that " control of the business is not control of the stock of a corporation conducting a business, nor, where a minority of stockholders are present, even though quiescent, representing 27.04 per cent of the stock, can we hold that the stock owned or controlled by the parent company constitutes substantially all of such stock."

Upon the authority of such quotation we must reject the claim of affiliation by reason of control of the business.

Petitioner, apparently, thinks it had control of the stock held by Wolfersberger due to the mortgage on the bakery company being held by a bank in which he was the principal stockholder. The proposition is at least novel. It may be true that such mortgage might have a restraining influence upon him to prevent a break with petitioner over management and policies of the bakery company so long

as the latter company was successful. On the other hand such mortgage gave Wolfersberger an interest in the success of that company in addition to that of a stockholder, and the option price indicates the mortgage investment was larger than his stock investment. Wolfersberger had not only the presumptive right to vote his stock if he saw fit to disagree with petitioner's policies, but he could also bring pressure to bear through his bank by reason of the mortgage. Thus it would seem the actual control, if any, arising from the loan made to the bakery company by his bank placed Wolfersberger in a position to force the petitioner's hand in the case of a show down between them. In any event the fact that the custom of the petitioner was probably essential to the bakery company's ability to make the mortgage payment had a double edge capable of cutting both ways. Certainly we have no assurance that any such round-about pressure as petitioner suggests would result as happily as it anticipates.

*Judgment will be entered for the respondent.*